

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------x

R.C. & S.C., on behalf of R.J.C.,

                     Plaintiffs,

            - against -

CARMEL CENTRAL SCHOOL DISTRICT,

                     Defendant.

------------------------------------------------------x

06 Civ. 5495 (CLB)

*Memorandum & Order*

Brieant, J.

       Before the Court in this appeal brought under the Individuals with Disabilities in

Education Act ("IDEA"), 20 U.S.C. §1400 *et. seq.*, is Plaintiffs' motion for summary judgment

filed on November 2, 2006 (Docs. 5 & 6).  Plaintiffs seek a "modified *de novo* review" of the

State Review Officer's ("SRO") interim decision, which reversed the Independent Hearing

Officer's ("IHO") interim order to continue under the "stay-put" provision of the IDEA, the Early

Intervention Services ("EIS") provided to the child pursuant to her Individualized Family

Services Plan ("IFSP"), during the pendency of a challenge to the child's first Individualized

Education Plan ("IEP") for the 2005-2006 school year.  Unlike most cases brought in this Court

under the IDEA, this case does not involve an ongoing dispute over an IEP's adequacy, but

involves only a claim for compensatory education, based on the SRO's denial of continued IFSP

services for a child matriculating from Early Intervention Services into preschool services.  As

explained more fully *infra*, Plaintiffs prevailed on their substantive challenge to the IEP's

adequacy and the administrative record is not before the Court.

MICROFILM

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: _____

1

*Background*

The Court discerns the following facts from the argument papers and decisions below. R.J.C. is a minor child classified with Autistic Disorder, Verbal Apraxia, and Auditory Processing Disorder. Prior to her third birthday, the child received services from New York State's Early Intervention Program pursuant to an IFSP. The child reached the age of three in April of 2005, and in September of 2005, was transitioning from early intervention into a preschool program. An IEP for the 2005-2006 school year was developed by the District's Committee on Preschool Education ("CPSE"), which was challenged by her parents for failure to provide the child with a Free and Appropriate Public Education ("FAPE") under the IDEA.

By letter dated September 14, 2005 and amended December 9, 2005, the parents brought a challenge to the IEP, alleging that it failed to provide the child with a FAPE, and seeking reimbursement as well as an order of "stay-put" provision pendency entitlements based on the IFSP services previously provided. The District maintained that any pendency services available would be placement in the preschool program it designated in the challenged IEP. A hearing was conducted on the merits January 4 and 5, 2006.

The IHO meanwhile rendered an "interim" order on December 27, 2005, concluding that pursuant to the reasoning of the Court of Appeals for the Third Circuit in *Pardini v. Intermediate Unit*, 420 F.3d 181 (3d Cir. 2005), R.J.C. had a statutory "pendency" entitlement to continuation of the services called for under her IFSP, pending final adjudication of the parties' dispute on the merits of the child's first IEP. In *Pardini*, the Court held that where a proposed IEP had not been

2

implemented when a dispute arose as to its content, the stay-put provision of the IDEA required

that the child continue to receive the services she was then receiving under her IFSP, which

constituted her "current educational placement," as it was the operative placement actually

functioning at the time when the dispute first arose. *Pardini* appears to be the first case in which

a federal circuit court of appeals has considered the issue of whether an IFSP can be used for

pendency purposes when there is a dispute about the very first IEP developed due to the child

reaching the age of 3 years.

      The "stay-put" provision of the IDEA provides:

> Maintenance of current educational placement. Except as provided in subsection (k)(4), during the pendency of any proceedings conducted pursuant to this section, unless the State or local educational agency and the parents otherwise agree, the child shall remain in the then-current educational placement of the child, *or, if applying for initial admission to a public school, shall, with the consent of the parents, be placed in the public school program until all such proceedings have been completed.*

20 USCS § 1415(j)(emphasis added).

      New York's Education Law, provides in relevant part:

> c. During the pendency of an appeal pursuant to this subdivision, unless the board and the parent otherwise agree: ... (ii) a preschool child not previously served pursuant to this section shall, if the parent agrees, receive services in the program designated by the board pursuant to such subdivision five, which designation resulted in such appeal.

NY CLS Educ § 4410[7][c][ii].

      In New York, early intervention for disabled children up to three years old are

implemented at the county level and funded by the NY State Department of Health ("DOH"), but

3

at age three, the children become eligible for services through the local school district, although the DOH continues to provide funding for the services until the child turns five.

The Court in *Pardini* noted that "the IDEA both anticipates and condones the possible interchangeability of an IFSP and IEP during transition to preschool" and "expressly states that an IFSP may be used if it is 'consistent with State policy,' and 'agreed to by the agency and the child's parents.'" *Pardini*, 420 F.3d at 191, *citing* 20 U.S.C. § 1412(a)(9).

The IHO found that the District disregarded the IDEA's clear mandate that placement in the public school program for children applying for initial admission to public school can only be effectuated with the consent of the parents, which in R.J.C.'s case, had not been obtained. The IHO determined that since the parents had not consented to the CPSE's IEP, the IEP could not be implemented for pendency purposes, and that the only viable alternative was to continue (or, due to the time lapse, reinstate) the provision of services to the child in accordance with her IFSP. She held that in R.J.C.'s case, it was her IFSP, and not her challenged prospective IEP that must be implemented as her "then current educational placement." *See PX-A.*

The District took an interlocutory appeal of the IHO's interim decision and by decision dated March 20, 2006, the New York State Education Department's SRO sustained the appeal in favor of the District, holding that the reasoning of *Pardini* was not persuasive because the Third Circuit failed to give substantial deference to the U.S. Department of Education's interpretation of the federal regulations, and because the Court's interpretation conflicted with controlling New

York State law and regulations pertaining to pendency placements of children transitioning to new preschool programs from early intervention programs, *citing N.Y. Educ. Law § 4410[7][c][ii]; 8 NYCRR 200.16[h][3][ii].*  The SRO noted that in the *Letter to Klebanoff*, 28 IDELR 478 (OSEP 1997), the Office of Special Education Programs of the U.S. Department of Education ("OSEP") stated that it did not interpret the pendency provisions as requiring a public agency responsible for providing a FAPE to maintain the child in a program developed for a two-year-old child as a means of providing the child and his or her family appropriate early intervention services under [Part C].  The SRO disagreed with the Court of Appeals for the Third Circuit, which concluded that the OSEP failed to explain how it reached that conclusion.

The SRO held as a matter of law that there are no "pendency" entitlements that attach to a child when the child is transitioning from services provided through New York State's Early Intervention Program and into the school district's Committee on Pre-School Special Education. He held that the pendency provision at Section 300.514(a), does not apply when a child is transitioning from a program developed under Part C of the Act, for early intervention services, into a program developed under Part B of the Act, for a FAPE under the IDEA.  The SRO also noted that in contrast to the facts of *Pardini*, this child was not, at the time of the parents' request for a hearing in September of 2005, receiving early intervention services, such that they could be continued to maintain the status quo.  *See PX-B.*

By decision dated July 24, 2006, the IHO ruled in favor of R.J.C. and her parents on the merits of their challenge to the 2005-2006 school year IEP, ordering reimbursement for services

provided by the parents during that school year, and ordering certain supplemental services. *See PX-C.* The District did not appeal and is presumed to have complied with the IHO's order in all respects.

Just prior to the IHO's July 24 decision on the merits, the Parents filed this action on July 20, 2006, to challenge the March 20, 2006, interim decision of the SRO, which denied continuation (or reinstatement) of IFSP pendency services. Plaintiffs seek an award of compensatory education or a remand to the IHO or SRO for a determination of the amount of compensatory education that should be awarded for any lapse in services. Plaintiffs also seek a declaration that they are the prevailing party for purposes of this action and the motion for pendency, so that attorneys' fees may be awarded as to pursuit of pendency entitlements. *See e.g., Winkelman v. Parma City Sch. Dist.*, 127 S. Ct. 1994 (May 21, 2007)(the IDEA includes a provision allowing an award of attorney's fees to a prevailing party who is the parent of a child with a disability).

Defendant contends that the claims are moot since Plaintiffs obtained the relief sought on the merits as to the 2005-2006 IEP, and because Plaintiffs have not exhausted their administrative remedies in seeking "compensatory services," as that issue was not addressed in the administrative proceedings or decision on the merits, and the merits decision was not appealed as inadequate for failure to include compensatory education. Plaintiffs respond that compensatory education is appropriate and that they could not at this time maintain a viable claim for compensatory education at the administrative level because the SRO has rejected the

6

Third Circuit's holding and reasoning in *Pardini*, and held that there is no pendency entitlement

for a child who was receiving Early Intervention Services.  Thus, they argue, an IHO would

likely dismiss a claim for compensatory education on the grounds that the SRO has ruled against

the pendency entitlements for these children.  Plaintiffs ask the Court to rule as a matter of law

that when a child who was in Early Intervention turns three and challenges the District's IEP, the

child has "stay put" and "pendency" entitlements to continued services called for in the child's

IFSP.  The issue appears to be one of first impression in this Circuit, although decided by the

Third Circuit in *Pardini* favorably to the child.


*Discussion*

It is well established that "in order to receive federal funding under the IDEA, a state

must provide to all children with disabilities 'a free appropriate public education.' 20 U.S.C. §

1412(a)(1)(A); Rowley, 458 U.S. [176,] 180-81." *Gagliardo v. Arlington Cent. Sch. Dist.*, 2007

U.S. App. LEXIS 12451 (2d Cir. 2007).


*I. Mootness & Failure to Exhaust Administrative Remedies*

As earlier noted, Defendant claims that the Plaintiffs fail to state a claim because they

failed to exhaust their administrative remedies as to compensatory education, and because their

claims are otherwise moot, Plaintiffs having prevailed on the merits of their challenge to the IEP.


The Supreme Court has reiterated the doctrine of mootness as follows:

Under Article III of the Constitution this Court may only adjudicate actual, ongoing

7

controversies. That the dispute between the parties was very much alive when suit was filed, or at the time the Court of Appeals rendered its judgment, cannot substitute for the actual case or controversy that an exercise of this Court's jurisdiction requires. In the present case, we have jurisdiction if there is a reasonable likelihood that respondents will again suffer the deprivation of [the] rights that gave rise to this suit.

*Honig v. Doe*, 484 U.S. 305, 317-318 (U.S. 1988)(citations omitted).

Four days after this action was filed, the IHO decision granted Plaintiffs' reimbursement requests for the costs of the services that Plaintiffs would have secured had their pendency application been approved.  It cannot be disputed that any claims except for compensatory education are moot in light of the IHO's reimbursement and supplemental services award to Plaintiffs on the  merits of their challenge to the child's IEP, and the District's decision to not appeal that order.

Our Court of Appeals has held the following as to exhaustion of administrative remedies:

Although the IDEA provides for a federal cause of action to enforce such rights, it imposes a broadly applicable requirement that plaintiffs first exhaust administrative remedies...

*Polera v. Bd. of Educ.*, 288 F.3d 478, 483 (2d Cir. 2002).

The IHO's July 2006 decision on the merits did not award compensatory education services and Plaintiffs did not appeal that decision, and as earlier noted, Plaintiffs argue that an IHO would likely dismiss a claim for compensatory education on the grounds that the SRO has ruled against IFSP pendency entitlements.

8

Parents do not clearly define by dates or omitted services what comprises the lapse of services of which they complain. In their reply papers, they appear to represent that the lapse was from the Fall of 2005 until the IHO's adjudication in July 2006, *Reply at 2*, but it is not entirely clear whether Parents seek compensatory services for the period from April through September or just from the date that they challenged the proposed 2005-2006 IEP and forward. Counsel for the parents represented that they supplemented services to the extent they could afford to do so, but it is not clear what services, if any, were provided by the parents during the lapse from April through September, in contrast to services provided at the parents' expense and then ordered reimbursed by the IHO's July 24, 2006 decision "for the 2005- 2006 school year." *PX-C at 29.*

Accordingly, factual issues as well as legal issues abound and exhaustion of administrative remedies as to possible compensatory education cannot be said to be futile. *See e.g. Antonaccio v. Bd. of Educ.*, 281 F. Supp. 2d 710, 715 (S.D.N.Y. 2003)(McMahon, J.)("[A]n IHO upheld the appropriateness of the IEP and denied the Antonaccio's request for compensatory education, the Antonaccios appealed the IHO's decision to the New York SRO, and the SRO upheld the IHO's decision in its entirety. Plaintiffs have exhausted their administrative remedies."). Contrary to Plaintiffs' argument, the SRO's denial of pendency services would not necessarily have precluded an equitable award of compensatory education, if such were awardable under these facts and under the law. Indeed, the denial of IFSP services during pendency would appear to call at least for some form of equitable relief.

Although the delay in pursuing pendency services from April until September goes

unexplained, the Court understands that parents of children requiring special educational

provisions are not always fully aware of the complicated nature and legal demands of ushering a

child through such services, including all relevant arcane bureaucratic impositions. This does not

render obsolete the need to exhaust administrative remedies before the Court may grant relief.

As to compensatory education, our Court of Appeals has held: "In *Burr I*, we recognized

that 'a handicapped child does not have a right to demand a public education beyond the age of

twenty-one,' but found that compensatory education was proper in that case because the EHA

regulations were 'grossly violated.'" *Mrs. C. v. Wheaton*, 916 F.2d 69, 75 (2d Cir. 1990)(citation

omitted).

While troubled by the potential and actual lapses in services for children who age out of

Early Intervention Services before an IEP is developed, this Court is constrained to deny

Plaintiffs' request for compensatory education for failure to exhaust administrative remedies.

While this Court agrees with the reasoning of the Third Circuit in *Pardini* and is confident that

our Court of Appeals would follow in a proper case, *Pardini* does not obviate administrative

exhaustion.

For the foregoing reasons, Plaintiffs' motion (Docs. 5 & 6) is denied and the Complaint is

dismissed without prejudice to pursue administrative remedies. The Clerk shall enter a final

judgment.

10

SO ORDERED.

Dated: White Plains, New York
~~June 13, 2006~~
6/13/2007

_____
Charles L. Brieant, U.S.D.J.

11